Carole JURICH, Individually and as Special Administrator of the Estate of Nicholas Jurich, Deceased, Appellant–Plaintiff,

v.

JOHN CRANE, INC., and WTI Rust Holdings, Inc., Appellees–Defendants.

Esther Serna, Individually and as Special Administrator of the Estate of Louis Serna, Deceased, Appellant–Plaintiff,

v.

Mallinckrodt Group, Inc., WTI Rust Holdings, Inc., Appellees–Defendants.

No. 45A05–0407–CV–385.

Court of Appeals of Indiana.

March 31, 2005.

Robert G. McCoy, Michael Kaczmarek, Cascino Vaughan Law Offices, Chicago, IL, James T. Walker, James T. Walker Professional Corporation, Merrillville, IN, Attorneys for Appellants.

David A. Temple, Matthew J. Schafer, Drewry Simmons Vornehm, LLP, Indianapolis, IN, Michael A. Pollard, Baker & McKenzie, LLP, Chicago, IL, Attorneys for Appellee, John Crane, Inc.

Thomas S. Ehrhardt, Garrett V. Conover, Kopka Pinkus & Dolin, Crown Point, IN, Attorney for Appellee, WTI Rust Holdings, Inc.

Todd C. Barsumian, Kahn Dees Donovan & Kahn, Evansville, IN, Attorney for Appellee, Mallinckrodt Group, Inc.

Douglas B. King, James M. Boyers, Wooden & McLaughlin, LLP, Indianapolis, IN, James D. Johnson, Rudolph Fine Porter & Johnson, LLP, Evansville, IN, Attorneys for Amicus Curiae, Defense Trial Counsel of Indiana.

## OPINION

BARNES, Judge.

### Case Summary[1]

Carole Jurich and Esther Serna, individually and as administrators of the estates of Nicholas Jurich and Louis Serna (collectively "the Appellants"), appeal the trial court's grant of summary judgment in favor of John Crane, Inc., WTI Rust Holdings, Inc., and Mallinckrodt Group, Inc. (collectively "the Appellees"). We affirm.

### Issue

We restate the issue before us as whether the trial court properly concluded that the ten-year statute of repose of the Product Liability Act ("PLA") barred the Appellants' claims against the Appellees for asbestos-related diseases that caused the decedents' deaths.

### Facts

Nicholas Jurich worked at Inland Steel in East Chicago from 1946 to 1986. During this time, he was exposed to asbestos from products and materials distributed by Appellees John Crane and WTI or its predecessor. In 1996, more than ten years after his retirement, Mr. Jurich was diagnosed with mesothelioma, a rare cancer of the lining of the lungs almost exclusively associated with asbestos exposure. In 1997, Mr. Jurich and his wife Carole sued John Crane, WTI, and others seeking damages for personal injuries and loss of consortium. Mr. Jurich died later that year.

The trial court granted John Crane's and WTI's motion for summary judgment, which contended that Carole's suit was time-barred by the ten-year statute of repose of the PLA, Indiana Code Section 34–20–3–1. On appeal, we reversed and held that the statute of repose was unconstitutional under Article 1, § 12 of the Indiana Constitution as applied to Jurich in part because there was scientific evidence that his lungs were injured by his every exposure to asbestos, within the ten-year repose period, even if his illness did not manifest itself until many years later. *Jurich v. Garlock, Inc.*, 759 N.E.2d 1066 (Ind. Ct.App.2001) (*"Jurich I"*).

Louis Serna was also employed at Inland Steel, in his case from 1942 to 1985,

---

1. Defense Trial Counsel of Indiana filed a motion to participate in this appeal as amicus curiae. We grant the motion and have considered the brief they provided to this court in deciding this appeal.

and was exposed to asbestos from products delivered by Appellees Mallinckrodt and WTI or its predecessor. He was diagnosed with mesothelioma in 1998. He and his wife, Esther, filed suit later that year, and Mr. Serna died in 1999.

The trial court granted summary judgment in favor of WTI and Mallinckrodt, again because of the statute of repose. On appeal, a different panel of this court than decided *Jurich I* did not reach the question of the statute of repose's constitutionality. Instead, the panel reversed summary judgment on the basis that WTI and Mallinckrodt fell under Indiana Code Section 34–20–3–2, which is an exception to the ten-year statute of repose for those who "mined and sold commercial asbestos." *Harris v. A.C. & S., Inc.,* 766 N.E.2d 383 (Ind.Ct.App.2002).

Our supreme court granted transfer in *Jurich I, Harris,* and several other asbestos cases. In so doing, it adopted that part of *Jurich I* holding that the exception to the statute of repose did not apply to defendants such as the Appellees who sold asbestos-containing products, but only to entities who produced and distributed raw asbestos. *Jurich v. Garlock, Inc.,* 785 N.E.2d 1093, 1095 n. 2 (Ind.2003) ("*Jurich II* "). However, the court disagreed with *Jurich I*'s resolution of the constitutional question. It held that with respect to asbestos claims and the PLA statute of repose, "a cause of action accrues at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease." *AlliedSignal, Inc. v. Ott,* 785 N.E.2d 1068, 1075 (Ind.2003).[2] The court also held that if a disease has actually manifested itself within the ten-year statute of repose period, but the potential plaintiff had no rea-

son to know of the diagnosable condition until after the ten-year period had expired, then the statute of repose would be unconstitutional as applied under Article 1, § 12. *Id.*

Our supreme court remanded to the trial court for further proceedings to determine whether a reasonably experienced physician could have diagnosed Mr. Jurich or Mr. Serna with an "asbestos-related illness or disease" within the ten-year period, but neither had reason to know of the diagnosable condition until the ten-year period had expired. *Harris,* 785 N.E.2d at 1090; *Jurich II,* 785 N.E.2d at 1095. On remand, the Appellees again moved for summary judgment on the basis of the statute of repose. In response, the Appellants designated evidence, in the form of expert testimony, indicating that changes to cells in Mr. Jurich's and Mr. Serna's lungs, necessary to the later development of mesothelioma, could have been detected by a reasonably experienced physician within the statute of repose period by means of an open lung biopsy and examination of the retrieved cells under a microscope. X-rays or other non-invasive procedures could not have detected the changes. One of these same experts also opined, without contradiction, that a reasonably experienced physician would not have diagnosed Mr. Jurich with mesothelioma before 1995 or Mr. Serna with the same disease before 1996, or well after the statute of repose period had passed for both individuals. All of the experts also stated that it would have been dangerous and medically unethical to perform an open lung biopsy on a patient while they were asymptomatic. Both Mr. Jurich and Mr. Serna were completely asymptomatic during the entirety of the ten-year statute of repose period and both were in good

---

**2.** Of the several asbestos cases handed down simultaneously, including *Harris, Ott,* and *Ju-* *rich II, Ott* contains our supreme court's detailed analysis applicable to all of the cases.

health when they retired from Inland Steel in the mid–1980's. The trial court granted the Appellees' motions for summary judgment, concluding that the PLA statute of repose was constitutional as applied to the Appellants. The Appellants now appeal.

## Analysis

On appeal, the standard of review for the grant or denial of a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003) (citing Ind. Trial Rule 56(C)). All facts and reasonable inferences drawn from those facts, as contained in the materials designated to the trial court, must be construed in favor of the non-moving party. *Id.* We must carefully review a decision on a summary judgment motion to ensure that a party was not improperly denied his or her day in court. *Id.* When a moving party asserts as an affirmative defense that an action is time-barred, and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *See Boggs v. Tri–State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind.2000).

Here, the Appellees undisputedly established that the Jurichs and the Sernas filed their lawsuits more than ten years after the last delivery of any of the Appellees' products. The PLA statute of repose generally bars any suit brought more than ten years after the delivery of a product to the initial user or consumer. Ind.Code § 34–20–3–1(b).[3] Thus, the burden was on the Appellants to demonstrate a material issue of fact that would avoid application of the statute of repose affirmative defense.

Article 1, § 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law." In *Jurich I*, we concluded:

> [T]he PLA ten-year statute of repose is unconstitutional as applied to a claim such as the Jurichs': where a plaintiff is injured by an asbestos-containing product either by exposure to asbestos fibers before the enactment of the PLA, and/or where there is no evidence the product was more than ten years old at the time the plaintiff was exposed to asbestos fibers contained in the product. Such a time limitation is an unreasonable legislative impediment on the bringing of an otherwise valid claim, due to the very long latency period [five to seventy years] of the development of asbestos-related diseases and the impossibility of the plaintiff's knowing whether such a disease is slowly progressing in his or her body. This represents a denial of justice that is inconsistent with Article I, Section 12 of the Indiana Constitution. . . .

*Jurich I*, 759 N.E.2d at 1077. In so concluding, we relied primarily on *Martin v. Richey*, 711 N.E.2d 1273, 1283–84 (Ind. 1999), which held the Medical Malpractice

---

3. There are two statutory exceptions to the rule, neither of which applies here. First, if a cause of action accrues more than eight but less than ten years after the initial product delivery, a suit may be brought at any time within two years of the accrual date. I.C. § 34–20–3–1(b). Second, Indiana Code Section 34–20–3–2 allows suit to be brought for asbestos-related injury at any time within two years of the accrual of a cause of action, but only against "persons who mined and sold commercial asbestos." As noted, *Jurich I* and *Jurich II* both held that this exception did not apply to entities such as the Appellees.

Act's two-year occurrence-based statute of limitations violated Article 1, § 12 as applied to plaintiffs who did not know of and could not have discovered the act of malpractice within the two-year period.

On transfer, our supreme court concluded:

> We hold that, with respect to asbestos claims under [the PLA statute of repose], a cause of action accrues at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease. *See e.g., Neubauer v. Owens–Corning Fiberglas Corp.*, 686 F.2d 570, 577 (7th Cir.1982) (A "cause of action accrues when the asbestos-caused disease becomes diagnosable—e.g., provable by medical evidence in court."). In this regard, we disapprove [*Jurich I*'s] and the trial court's formulations to the extent that they hold that a cause of action accrues when exposure to asbestos occurs even though a disease does not manifest itself until many years later. In our view, it is only when the disease has actually manifested itself (and therefore could be diagnosed by a reasonably experienced physician) that the cause of action accrues. Thus, *Martin* is implicated only where a cause of action in fact accrues (i.e., a reasonably experienced physician could have diagnosed the plaintiff with an asbestos-related illness or disease) within the ten-year statute of repose, yet the potential plaintiff had no reason to know of the diagnosable condition until the ten-year period had expired.

*Ott*, 785 N.E.2d at 1075.

The parties agree that there is no evidence Mr. Jurich and Mr. Serna had any reason to know of their developing asbestos-related illnesses within the ten-year statute of repose period, as both were in good health and asymptomatic until shortly before being diagnosed with mesothelioma. Thus, the focus here is on the first part of the *Ott* "exception" to the statute of repose: whether "a reasonably experienced physician could have diagnosed the plaintiff with an asbestos-related illness or disease" within the ten-year period. *Ott*, 785 N.E.2d at 1075. The Appellants maintain that they designated sufficient evidence to create a material issue of fact on this point because experts did testify that a physician could have identified asbestos-related damage to Mr. Jurich's and Mr. Serna's lungs if certain procedures had been performed within the ten-year statute of repose period.

The parties' competing positions in this case essentially narrows to a very important difference in how they construe *Ott*'s requirement that a "reasonably experienced physician" could have been able to diagnose a plaintiff as having an "asbestos-related disease or illness" within the ten-year statute of repose period. The Appellants contend that if a "reasonably experienced physician" could have diagnosed an illness or detected asbestos-related lung damage by conducting and interpreting certain diagnostic tests within the ten-year period, then *Ott* is satisfied; they contend there is designated evidence to support their position that such detection of injury could have been made in Mr. Jurich's and Mr. Serna's cases. The Appellees contend that the question is whether a "reasonably experienced physician" would have even ordered the necessary tests to detect asbestos injury in an asymptomatic patient in the first place; they contend there is uncontradicted evidence that a doctor would not have in either Mr. Jurich's or Mr. Serna's cases. We believe that the Appellees' position more closely aligns with our supreme court's intent in *Ott*.

In *Jurich I*, we essentially accepted the Appellants' current position. We held in that opinion, based on uncontradicted scientific evidence present in the record:

> Mr. Jurich's every exposure to asbestos from defendants' products injured his lungs and contributed to his development of mesothelioma. However, this disease did not manifest itself until more than ten years after exposure. In this case, enforcement of the statute of repose would, bar otherwise valid claims before the Jurichs could have been expected to have knowledge of those claims. We conclude that this runs directly afoul of *Martin v. Richey.*

*Jurich I*, 759 N.E.2d at 1075. Thus, our original view in this matter was that the defendants' products began causing actual injury to Mr. Jurich's lungs within ten years of the delivery of the products, which was sufficient to give rise to a cause of action within the PLA's statute of repose, even if a disease or illness did not manifest itself until well after the repose period had passed. We recognized that asbestos exposure causes actual damage to one's lungs long before a manifested disease may develop. The evidence the Appellants presented in this case also established that asbestos causes cellular-level, asymptomatic damage to lungs before the development of mesothelioma or other manifested diseases.

Our supreme court did not accept our analysis when it handed down *Ott* and *Jurich II* and reached a different result. It did not agree with our belief that *any* damage to a person's lungs caused by asbestos within the ten-year statute of repose period is sufficient to allow a cause of action to accrue. Instead, it clearly had something more concrete in mind when it said "it is only when the disease *has actually manifested itself* (and therefore could be diagnosed by a reasonably experienced physician) that the cause of action accrues." *Ott*, 785 N.E.2d at 1075 (emphasis added).

We also cannot ignore our supreme court's language stating that injury for the purpose of determining when a cause of action has accrued "does not occur upon mere exposure to (or inhalation of) asbestos fibers. There is substantial authority on this point." *Id.* Obviously, our supreme court here was referring to injury in a legal, not scientific, sense. We explicitly noted the uncontradicted scientific evidence in *Jurich I* that each exposure to asbestos fibers did in fact cause some degree of damage to Mr. Jurich's lungs and contributed to his later development of mesothelioma. In *Ott*, our supreme court rejected the notion that this level of injury, though scientifically established, was sufficient to constitute a legally cognizable injury:

The "substantial authority" *Ott* refers to is several extra-jurisdictional cases that have addressed when a cause of action accrues in the context of asbestos exposure. *Id.* at n. 8. For example, the Arizona Court of Appeals has stated, "subclinical injury resulting from exposure to asbestos is insufficient to constitute the actual loss or damage to a plaintiff's interest required to sustain a cause of action under generally applicable principles of tort law." *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28, 30 (Ct.App.1987) (citing *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 942 (3d. Cir.1985), *cert. denied*, 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985)). "Subclinical" is defined as: "Denoting the presence of a disease without manifest symptoms; may be an early stage in the evolution of a disease." Stedman's Medical Dictionary 1692 (26th ed.1995); *cf. id.* at 353 (defining "clinical" as, inter alia, "Denoting the symptoms and course of a disease, *as distinguished from*

*the laboratory findings of anatomical changes.*") (emphasis added). Additionally, the Pennsylvania Supreme Court has held that "asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action.... [N]o physical injury has been established that necessitates the awarding of damages...." *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 237 (1996).

We must carefully consider the language specifically chosen or highlighted by our supreme court, including "asbestos-related *illness or disease*," or "manifested" disease as contrasted with "subclinical" or "asymptomatic" conditions caused by asbestos. *Ott*, 785 N.E.2d at 1075 (emphasis added). In so doing, we conclude that *Ott*'s requirement of a "manifested" "asbestos-related illness or disease" that could have been diagnosed by a "reasonably experienced physician" refers to a disease that is a clinically-recognized symptomatic condition, or one that could have been detected by a competent physician conducting a routine examination of the patient. This would exclude asymptomatic conditions that merely represent the early stages of a potential disease or conditions that could only be detected by a physician utilizing extreme and medically unsound or unethical measures.

We also observe that medical science currently recognizes four asbestos-related lung diseases: mesothelioma (cancer affecting the lining of the lung), lung cancer (which invades the lung's airways), asbestosis, and general pleural effusions or fibrosis. *See* Appellee's App. p. 563 (article by expert witness Arnold Brody, Ph.D., "Development of Asbestos–Related Lung Disease (Updated)"); Centers for Disease Control and Prevention—Agency for Toxic Substances and Disease Registry, *Health Effects of Exposure to Asbestos*, http://www.atsdr.cdc.gov/asbestos/asbes-tos_effects.html (last updated October 10, 2003). At a minimum, we believe that a plaintiff attempting to satisfy the *Ott* "exception" to the PLA statute of repose must submit evidence that a reasonably experienced physician could have diagnosed the patient with one of these conditions within the statute of repose period, not merely that the plaintiff had lung damage that could eventually lead to one of these conditions.

Here, the uncontradicted designated expert evidence is that although Mr. Jurich's and Mr. Serna's inhalation of asbestos would have almost immediately caused damage to their lungs, and that such damage ultimately led to mesothelioma, they would have been asymptomatic during the entirety of the statute of repose period. Furthermore, the expert evidence indicated that this damage is "not the same thing as the disease mesothelioma" and that most of the time, such damage does not in fact result in mesothelioma. Appellee's App. p. 510. Experts also indicated that a reasonably experienced physician would not have diagnosed Mr. Jurich or Mr. Serna with mesothelioma until after the statute of repose period had expired. Additionally, the uncontradicted expert opinion in the designated materials is that it would have been highly dangerous, unethical, and medically inappropriate to perform on an asymptomatic individual, such as Mr. Jurich or Mr. Serna, the invasive testing necessary to detect the precancerous changes in the person's cells caused by asbestos. On the basis of this evidence, we conclude that there are no disputed material facts and that the Appellants failed to establish a reasonably experienced physician could have diagnosed either Mr. Jurich or Mr. Serna with an asbestos-related disease or illness within the ten-year statute of repose period, as we believe our supreme court intended the *Ott* test to be applied. Thus, they have

failed to demonstrate that the PLA statute of repose is unconstitutional as applied to them.

The Appellants also argue that the PLA statute of repose imposes an impossible condition on their access to the courts to pursue a tort remedy, in contravention of Article 1, § 12 and *Martin v. Richey.* The author of this opinion was sympathetic to their position, as reflected in *Jurich I.*[4] However, a majority of our supreme court rejected that position in *Ott.* The Appellants are essentially asking us to contravene that case. As an intermediate appellate court, we cannot revisit, reverse, or otherwise attempt to circumvent the holding of *Ott. See Red Arrow Ventures, Ltd. v. Miller,* 692 N.E.2d 939, 946 (Ind.Ct.App. 1998), *trans. denied.* Accepting the Appellants' position would essentially turn *Ott*'s narrow "exception" to the PLA statute of repose into a very broad one, applicable in most if not all asbestos cases, and mark a return to the reasoning of *Jurich I.* We cannot do that, and are bound by the precedent set by our supreme court.

### Conclusion

The Appellants failed to present any evidence that a "reasonably experienced physician" could have diagnosed either Mr. Jurich or Mr. Serna with "an asbestos-related illness or disease" within ten years of the last delivery of any of the Appellees' asbestos-containing products. The trial court, therefore, properly concluded that there are no genuine issues of material fact and that the Appellees are entitled to summary judgment as a matter of law because the Appellants' claims are time-barred by the PLA statute of repose. We affirm.

Affirmed.

MAY, J., and DARDEN, J., concur.

---

**4.** It is unlikely that the *Ott* exception to the statute of repose could be satisfied with any frequency, given the long latency period of asbestos-related diseases and the fact that such diseases will in the vast majority of cases not manifest themselves until well after the ten-year statute of repose period. *See, e.g.,* Appellee's App. p. 543, Deposition of Arnold Brody, Ph.D. (acknowledging studies placing median latency period for mesothelioma at thirty-two years after asbestos exposure).