# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2016, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James A. Love,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 25, 2016<br><br>Court of Appeals Case No.<br>11A05-1507-CR-965<br><br>Appeal from the Clay Superior Court<br><br>The Honorable J. Blaine Akers, Judge<br><br>Trial Court Cause No.<br>11D01-1408-CM-579<br>11D01-1501-CM-26 |

**May, Judge.**

[1] James A. Love appeals his convictions in two causes. Under cause number 11D01-1408-CM-579 ("Cause 579") the trial court convicted Love of Class A misdemeanor invasion of privacy.[1] Under cause number 11D01-1501-CM-26 ("Cause 26"), the trial court convicted Love of Class A misdemeanor invasion of privacy and Class A misdemeanor intimidation.[2] He presents three issues for our review, which we restate as:

> 1. Whether the trial court abused its discretion when it allowed the State to amend the information against Love after its cause-in-chief in Cause 579;
>
> 2. Whether the State presented sufficient evidence Love committed the offenses of which he was convicted; and
>
> 3. Whether Love's convictions of Class A misdemeanor invasion of privacy and Class A misdemeanor intimidation in Cause 26 subjected him to double jeopardy.

[2] We affirm.

# Facts and Procedural History

[3] On September 10, 2013, the trial court issued an *ex parte* protective order ("2013 Order") prohibiting Love from "harassing, annoying, telephoning, contacting or directly or indirectly communicating with [M.L.], except: making

---

[1] Ind. Code § 35-46-1-15.1 (2010).

[2] Ind. Code § 35-45-2-1 (2013).

arrangements through a 3rd party for parenting time." (Ex. Vol. at 8.) On July 21, 2014, police served Love a copy of the 2013 Order and the petition filed by M.L. that the court considered in granting the 2013 Order.

[4] On July 27, 2014, Love called M.L. at her home, where she resided with the couple's daughter, and told M.L. "that no matter what he wasn't going to leave [M.L.] alone. That he was goin' [sic] get [M.L.]." (Tr. at 14.) M.L. ended the call without responding to Love. The State charged Love with Class A misdemeanor invasion of privacy under Cause 579 for violating the 2013 Order. The information alleged the crime occurred "on or about August 13, 2014." (App. at 73.) On October 13, 2014, the trial court issued a no contact order ("2014 Order") as part of Cause 579, ordering Love, in relevant part,

> to have no contact with [M.L.] in person, by telephone or letter, through an intermediary, or in any other way, directly or indirectly, except through attorney of record, while released from custody pending trial. This includes, but is not limited to, acts of harassment, stalking, intimidation, threats, and physical force of any kind.

(Ex. Vol. at 11.)

[5] On July 9, 2015, while the 2014 Order from Cause 579 was in effect, Love and M.L. appeared in court for their divorce hearing. During the hearing, M.L. testified about incidents of domestic violence Love had committed against her. After the hearing "[M.L.] was sitting there with [her] attorney, and [Love] came up to the table and he scowled at [M.L.] and he looked at [M.L.'s attorney] and he looked at [M.L.], and told [M.L.], he said, [sic] 'It's not over yet, I'm not

done with you yet.'" (Tr. at 27.) This exchange occurred after "the Judge had left the room." (*Id*. at 32.) M.L. took Love's words to be a threat

> [b]ecause, he has been driving up and down the streets, uh, the other phone call, uh that you mentioned, he did call and say he wanted to talk to the grandchildren.[3] You know, he's [sic] will not leave me alone, he's [sic] has been threatening my friends, he's threatened my daughter, he's threatened my boyfriend, uh, he's came, [sic] he's called Wal-Mart and tried to get me fired from my position. Um, it went all the way up to the (inaudible) office and they called back down and my uh store manager had to talk to him, and she called me in and told me that you know that he was still harassing me and everything and trying to get me fired. And you know it didn't work, but you know that she had to talk to him and she talked to him for quite a while and then he hung up on her. . . . And he has beat me up and put me in the hospital.

(*Id*. at 27-8) (footnote added). Based thereon, the State charged Love under Cause 26 with Class A misdemeanor intimidation and Class A misdemeanor invasion of privacy for violating the 2014 Order.

[6] On April 8, 2015, the trial court held bench trials on Cause 579 and Cause 26. At the end of the State's presentation of evidence in Cause 579, the State moved to amend the charging information against Love to indicate the date of the alleged phone call was July 27, 2014, rather than "on or about August 13, 2014," (App. at 73), as charged in the original information. The trial court

---

[3] It is unclear from the record to whom M.L. is referring - she indicated in her earlier testimony she lived with her daughter, who was subject to parenting time guidelines, but did not mention grandchildren.

granted the State's request over Love's objection. Love then moved for a directed verdict, alleging the 2013 Order was invalid, but the court denied that motion. The trial court found Love guilty of Class A misdemeanor invasion of privacy in Cause 579 for violating the 2013 Order.

During the bench trial regarding Cause 26, Love again moved for a directed verdict. He argued the 2014 Order, which the court put into place as part of Cause 579, was void because Cause 579 should not have been filed based on the 2013 Order, which Love insisted was void. The trial court denied Love's motion for a directed verdict and found Love guilty in Cause 26 of Class A misdemeanor invasion of privacy and Class A misdemeanor intimidation. The trial court sentenced Love to an aggregate sentence of one and one-half years.

# Discussion and Decision

## I. Amendment to Charging Information

We review a decision to allow the State to amend an information for an abuse of discretion. *Ramon v. State*, 888 N.E.2d 244, 253 (Ind. Ct. App. 2008). The trial court permitted the State to amend the charging information for Cause 579 to change the date of the alleged phone call that violated the 2013 Order from "on or about August 13, 2014," (App. at 73), to July 27, 2014, to match M.L.'s testimony. Love argues the trial court abused its discretion because his right to present a defense was substantially prejudiced.

[9]     Indiana Code § 35-34-1-5 governs amendments to charges and states in relevant part:

> (a)  An indictment or information which [sic] charges the commission of an offense may not be dismissed but may be amended on motion by the prosecuting attorney at any time because of any immaterial defect, including:
>
> * * * * *
>
> (7)  the failure to state the time or place at which the offense was committed where the time or place is not of the essence of the offense;
>
> * * * * *
>
> (c) Upon motion of the prosecuting attorney, the court may, at any time before, during or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which [sic] does not prejudice the substantial rights of the defendant.

[10]    An amendment to a charging information is one of form

> if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an amendment is one of substance only if it is essential to making a valid charge of the crime.

*Fields v. State*, 888 N.E.2d 304, 310 (Ind. Ct. App. 2008).  "Whether an amendment is a matter of substance or form is a question of law, which we

review *de novo*." *Id*.  The substantial rights implicated by Indiana Code § 35-34-1-5

> include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights.  Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.

*Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (citations and internal quotations omitted), *trans. denied*.

[11]   To prove Love committed Class A misdemeanor invasion of privacy, the State had to prove he violated a protective order.  *See* Ind. Code § 35-46-1-15.1 (2014) (elements of offense).  Love asserts the change in dates of his alleged offense

> misled and prejudiced Love because he knew the State could not prove any telephone calls from him to [M.L.] in August 2014. Love did not know the charge actually was based on an alleged telephone call in July 2014 until the State sought to amend the Information at the end of its cause-in-chief. . . .  [H]e had no reason to collect evidence, such as telephone records or the testimony of his daughter, to prove he did not call [M.L.] in July 2014 or that he did not knowingly communicate with [M.L.] directly or indirectly in July 2014.

(Br. of Appellant at 16.)  Love contends time is an element of invasion of privacy because "[p]rotective orders have a specific expiration date. . . .  Thus, the date of the alleged Invasion of Privacy is critical to determining whether Invasion of Privacy has been committed." (*Id*. at 13.)  We disagree.

[12] The State argues time was not an element of the crime and therefore the change in date was not a change in substance and did not prejudice Love's defense. Because time was not an element of the crime, the State contends, it was required to prove only that Love violated the 2013 Order within the statutory period of limitations and was not required to prove Love did so on any particular date. *See Poe v. State*, 775 N.E.2d 681, 686 (Ind. Ct. App. 2002) ("When time is not an element of the crime charged, or 'of the essence of the offense,' the State is only required to prove that the offense occurred at any time within the statutory period of limitations," and not necessarily on the precise date alleged.), *trans. denied*.

[13] Generally, "time is not of the essence in proving a criminal offense." *Aikens v. State*, 289 N.E.2d 152, 154, 154 Ind. App. 36, 40 (1972), *reh'g denied*. In similar causes involving the amendment of a charging information, Indiana courts have determined time is not an element of many crimes, including murder, child molesting, criminal mischief, and burglary. *See Johnson v. State*, 734 N.E.2d 530, 532 (Ind. 2000) (murder); *Ricketts v. State*, 498 N.E.2d 1222, 1224 (Ind. 1986) (child molesting); *R.L.H. v. State*, 738 N.E.2d 312, 317 (Ind. Ct. App. 2000) (criminal mischief); and *Sangsland v. State*, 715 N.E.2d 875, 880 (Ind. Ct. App. 1999) (burglary), *trans. denied*. We have not addressed time as an element of invasion of privacy.

[14] We hold the expiration date of a protective order is analogous to the requirement in a child molesting cause that the State prove the crime against a child was committed when the child was a certain age. In *Ricketts*, the

defendant was charged with Class C felony child molesting, which required the victim to be twelve years or younger when the molestation occurred. *See* Ind. Code § 35-42-4-3(b) (1981) (elements of the crime). The State alleged the molestation occurred on or about a specific date, but at trial the victim testified the molestation occurred on a different date. The court granted, over Ricketts' objection, the State's motion to amend the charging information. On appeal, our Indiana Supreme Court held time was not an element of Class C felony child molesting. *Ricketts*, 498 N.E.2d at 1224. The Court held the State had to prove only that the victim was the proper age when the crime occurred.

[15]     The same is true for invasion of privacy. Time is not of the essence as to the specific date that the invasion occurred; the State must prove only that a protective order was in effect on the day the contact occurred.[4] Thus, the amendment of the date in the charging information against Love was one of form, not substance. His substantial rights were not violated, and the trial court did not abuse its discretion by allowing the State to amend the charges.

---

[4] As a point of clarification, time is "of the essence" for an offense when the act "becomes criminal only when done at a particular time." *State v. Slentz*, 61 N.E. 793, 794, 27 Ind. App. 557, 560 (1901). In *Slentz*, the alleged offense involved the improper screening of rooms where "intoxicating liquors" were kept on a Sunday, when sales of liquor were prohibited by law. Burns Ind. Code Ann. Supp. § 7283d (1897). The affidavit alleged Slentz committed the offense "on or about the 25th day of March, 1900, * * * said day being the first day of the week, commonly called 'Sunday.'" *Slentz*, 61 N.E. at 794, 27 Ind. App. at 560. We affirmed the trial court's decision to quash the affidavit because "the time, which was an essential ingredient of the offense, was not stated with sufficient accuracy." *Id*. The affidavit contained the words "on or about," *id*., but the improper screen was a crime that could occur only on a Sunday.

# II. Sufficiency of Evidence

[16] When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

## A. Validity of Protective Orders

[17] One of the ways invasion of privacy occurs is when a person violates the restrictions set forth in a protective order. *See* Ind. Code § 35-46-1-15.1 (2014) (elements of offense). Love argues his convictions of the two counts of Class A misdemeanor invasion of privacy cannot stand because the protective orders he is alleged to have violated are void. He contends, "the Invasion of Privacy count in [Cause 579] rested on an alleged violation of the [2013 Order] and the Invasion of Privacy count in [Cause 26] rested on an alleged violation of the [2014 Order]. Neither protective order was valid." (Br. of Appellant at 23.)

Love's argument is an impermissible collateral attack on the 2013 Order and, thus, his argument fails.

[18]  A collateral attack occurs when a litigant uses one court to question the validity of the judgment of another court of competent jurisdiction. *In re Adoption of A.N.S.*, 741 N.E.2d 780, 786 (Ind. Ct. App. 2001). Our Indiana Supreme Court explained in *State ex rel. Meade v. Marshall Superior Court II*:

> When an action is pending before a court of competent jurisdiction, other courts must defer to that court's extant authority over the cause. Courts observe this deference in the interests of fairness to litigants, comity between and among the courts of this state, and judicial efficiency. This principle is implemented by Trial Rule 12(B)(2), which allows a party to move for dismissal on the grounds that the same action is pending in another Indiana court. This rule applies where the parties, subject matter, and remedies of the competing actions are precisely the same, and it also applies when they are only substantially the same.

644 N.E.2d 87, 88-9 (Ind. 1994).

[19]  While Indiana has not extended this rule to include collateral attacks on the validity of protective orders, the Seventh Circuit Court of Appeals held a defendant could not collaterally attack the protective order on which his conviction was based in *United States v. Westcott*, 576 F.3d 347, 352 (7th Cir. 2009), *cert. denied* 559 U.S. 940 (2010). A trial court convicted Westcott of unlawful possession of a firearm based on a protective order that prohibited him from possessing firearms. Westcott argued the evidence was insufficient to

convict him of the charge because the protective order was "void as a matter of law." *Id.* at 351.  The Seventh Circuit held as long as the protective order comported with procedural requirements, "[a]ny internal inconsistencies in the Order [of Protection] are irrelevant to the fact of the Order[.]"  *Id*. at 353.

[20]  *Westcott* relied, in part, on *Lewis v. United States*, 445 U.S. 55 (1980), in which the Court held Lewis, who was on trial for possessing a firearm after being convicted of a felony in state court, could not collaterally attack the conviction of breaking and entering that was the basis for the firearm charges against him. The Court noted Lewis "must challenge the validity of a prior conviction, or otherwise remove the firearms disability, *before* obtaining a firearm."  *Id*. at 67 (emphasis in original).

[21]  We adopt the *Westcott* reasoning.  The 2013 Order was granted under the provisions of Ind. Code § 34-26-5-9(b), which allows the trial court to enter an *ex parte* protective order without notice and hearing.  The 2013 Order was based on M.L.'s petition to renew a protective order put in place in 2011,[5] which was set to expire on September 13, 2013.  Ind. Code § 34-26-5-9(f) states a

> finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household.  Upon a showing of domestic or family violence by a preponderance of

---

[5] The 2011 protective order is not contained in the record.

the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence.

[22]     The trial court made these findings:

> a. The Petitioner has shown, by a preponderance of the evidence, that ***OFFENSE OPTION WAS NOT SELECTED*** has occurred sufficient to justify the issuance of this Order.
>
> b. This order does . . . protect an intimate partner or child.
>
> c. The Respondent represents a credible threat to the safety of the Petitioner or a member of the Petitioner's household.
>
> d. The following relief is necessary to bring about a cessation of the violence or threat of violence.

(Ex. Vol. at 7.)

[23]     Love asserts the 2013 Order is void because, based on the language in the 2013 order indicating "***OFFENSE OPTION WAS NOT SELECTED***," (*id*.), "the [2013 Order] reflects no finding that domestic or family violence has occurred." (Br. of Appellant at 25.) However, like in *Westcott*, Love alleges inconsistencies that do not affect the fact the order existed at the time he committed his crime. *See Westcott*, 576 F.3d at 353 (arguments regarding alleged inconsistences in protective order findings are impermissible collateral attack and do not address the existence of the order).

[24]     Love's challenges to the validity of the 2013 Order and the 2014 Order are impermissible collateral attacks because his arguments are based on the findings of a different court that had jurisdiction over the 2013 Order. Because the State presented evidence the protective orders existed and were in effect when Love violated their terms, the State presented sufficient evidence regarding that element of the invasion of privacy charges.

### B. Acts Committed

#### 1. Invasion of Privacy in Cause 579

[25]     To prove Love committed Class A misdemeanor invasion of privacy in Cause 579, the State was required to prove Love violated the 2013 Order. *See* Ind. Code § 35-46-1-15.1 (2014) (elements of offense). The State presented evidence Love called M.L. and said, "no matter what he wasn't going to leave [her] alone. That he was goin' [sic] to get [her]." (Tr. at 14.) The State presented evidence the phone call took place while the 2013 Order was in effect. Love's alternate version of the facts suggesting he called to speak to his daughter, which he alleges was not prohibited by the 2013 Order,[6] is an invitation for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge credibility of witnesses).

---

[6] The terms of the 2013 Order did not name the couple's daughter as a "designated family member" protected as part of the order and permitted Love to make "arrangements through a 3rd party for parenting time." (Ex. Vol. at 8.)

## 2. Invasion of Privacy in Cause 26

[26] To prove Love committed Class A misdemeanor invasion of privacy in Cause 26, the State was required to prove Love violated the 2014 Order. *See* Ind. Code § 35-46-1-15.1 (2014) (elements of offense). The State presented evidence Love approached M.L. following a hearing regarding their divorce and after "the Judge had left the room." (Tr. at 32.) Love argues his conviction in Cause 26 should be reversed because the more appropriate way to address the act was to find Love in contempt of court.

[27] In *Thomas v. State*, 936 N.E.2d 339 (Ind. Ct. App. 2010), *trans. denied*, we reversed Thomas' conviction of invasion of privacy and instead directed the trial court to conduct contempt proceedings. Thomas' conviction was based on her comment to the victim "at the end of the hearing [on the protective order] and in the court's presence." *Id*. at 339. We held

> in the context of this cause, there is a more appropriate mechanism to address Thomas's statement to Smith in the courtroom. Indiana courts have inherent power to punish summarily acts of direct contempt without formal charges or an evidentiary hearing. The purpose of this power is to enable the court to protect itself against gross violations of decency and decorum. Direct contempt includes those actions occurring in or near the court, interfering with the business of the court, of which the judge has personal knowledge.

> Under the circumstances set forth in the record, the institution of direct contempt proceedings was the more appropriate action in response to Thomas's statement to Smith in the courtroom.

*Id.* at 340-41 (internal quotes and citations omitted).

[28] The State presented evidence Love approached M.L. at her counsel table after the divorce hearing and after the judge left the room. Thus, his actions did not "interfer[e] with the business of the court." *Id.* at 341. Nor was it an act "of which the judge has personal knowledge." *Id.* *Thomas* does not control, and a contempt finding would not be an appropriate resolution to this cause.

### 3. Intimidation in Cause 26

[29] To prove Love committed Class A misdemeanor intimidation, the State had to prove Love communicated a threat to M.L. with the intent to place her in "fear of retaliation for a prior lawful act." Ind. Code § 35-45-21-1(a)(2) (2013). The State presented evidence Love approached M.L. after their divorce hearing, during which she testified to multiple instances of domestic violence, and said to M.L., "It's not over yet, I'm not done with you yet." (Tr. at 27.) M.L. testified she understood Love's statement to be a threat. She clarified on cross-examination that Love was "looking at [her]," (*id.* at 29), when he issued the threat. Love's alternate version of the facts, including his contentions he directed the statement at M.L.'s attorney and he did not intend to put M.L. in fear, are invitations for us to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge credibility of witnesses).

# III. Double Jeopardy

[30] Article 1, Section 14 of the Indiana Constitution provides that "no person shall be put in jeopardy twice for the same offense." Double jeopardy may be proven when there is a "reasonable probability that the evidentiary facts used by the fact finder to establish the essential elements of one offense may also have been used to establish the essential elements of the second offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). To demonstrate two offenses are the same, the appellant must show a reasonable possibility that the facts used by the jury to establish the essential elements of one offense were also used to establish the essential elements of the second offense. *Bruce v. State*, 749 N.E.2d 587, 590 (Ind. Ct. App. 2001), *trans. denied*. The appellant must show more than a remote or speculative possibility that the same facts were used. *Id*. To determine what facts were used, we consider the evidence, charging information, final jury instructions, and arguments of counsel. *Id*.

[31] Love contends his convictions in Cause 26 of both invasion of privacy and intimidation subjected him to double jeopardy because the "evidence at trial showed both counts were based on an alleged brief contact by Love with [M.L.] at a table in the courtroom at the end of a court hearing in their dissolution of marriage proceeding." (Br. of Appellant at 29.) However, that "brief contact" included two separate acts, each of which supported a different conviction, such that Love was not subjected to double jeopardy.

[32] The State presented evidence Love approached M.L. at her counsel's table after their divorce hearing and after the Judge had left the courtroom, in violation of the 2014 Order prohibiting him from having contact with her. The State presented separate evidence Love threatened M.L. by saying, "It's not over yet, I'm not done with you yet." (Tr. at 27.) Because separate facts supported a finding Love was guilty of each offense, there was no reasonable probability the judge relied upon the same facts to establish Love's convictions. *See*, *e.g.*, *Goldsberry v. State*, 821 N.E.2d 447, 460 (Ind. Ct. App. 2005) (no double jeopardy when separate evidence presented to support elements of each crime).

# Conclusion

[33] The trial court did not abuse its discretion when it permitted the State to amend the charging information to reflect the date Love called M.L. because time is not an element or "of the essence" of invasion of privacy. As Love may not collaterally attack the validity of the 2013 Order and the 2014 Order, the State presented sufficient evidence they were in effect when Love violated them. The State presented sufficient evidence Love committed Class A misdemeanor invasion of privacy in Cause 529. The State also presented evidence Love committed Class A misdemeanor invasion of privacy and one count of Class A misdemeanor intimidation in Cause 26. Finally, Love's convictions in Cause 26 of Class A misdemeanor invasion of privacy and Class A misdemeanor intimidation did not subject him to double jeopardy because the State presented

independent evidence to prove each offense.  Accordingly, we affirm Love's convictions.

[34]    Affirmed.

Najam, J., and Riley, J., concur.